This is the first sitting of the new year, so happy new year everyone. We're going to take the J.T.v.Dumont Public Schools case first. Mr. Wilhelm, good morning to you. Good morning, Your Honor. Good morning. Peter Wilhelm with White and Case. For Appellants J.T. and A.T., I'd like to reserve three minutes for rebuttal. Of course. We are here today, Your Honors, because Appellee Dumont Public Schools separates all kindergartners who require a part-time special education teacher into one special class. Your claim here is just like this district here is fairly small, is that correct? That's correct, Your Honor. So Seltzer is the school that is closest to home. Yes. And he was assigned to Grant. How far away is Grant from Seltzer? The school district is about two square miles, Your Honor, so it's less than two miles. Okay. So it's close by. Yes. And the biggest concern I have is that, in effect, he was treated adequately, was he not? I mean, you're saying that they met, there was a FAPE here that was met. It was the procedural concerns that you have. That's correct, Your Honor. Appellants don't make any allegations with regard to his substantive appropriate education. And so, in fact, he did receive an appropriate education during that year then? The court can rule for appellants assuming that he did receive an appropriate education. Okay. I'd like to take Amber's point for a moment. The district is two square miles, and Seltzer is the closest school, but you don't know how far Grant is from the residence? I know it's between one and two miles, Your Honor. One or two miles. Well, did the children walk to school, get school transportation, or parents take children to school? At least for our client, Your Honor, A.T., if he had been attending the Seltzer school, he would have walked to school. His parents would have escorted him, walking him to school. And to get to Grant, he gets a bus to school? That's correct, Your Honor. As I understand his chief claim, it's that his parents see the problem with the child going to school, which has a high concentration of kindergarten children that require special education. So that would not be – that would not satisfy the mainstreaming goal of the idea. Is that her chief complaint? I think that's – it's both, Your Honor. It's that appellants say that Dumont has violated the IDEA by failing to give individual consideration to two things. One, whether or not the students who need a part-time special education teacher, whether or not the location of that service would impact their education, so that Dumont needs to consider the location and whether it impacts education. But second, whether this particular class that had a higher percentage of students who required special education services, whether that class impacted the student's education. And on the first one, how did it adversely impact his education? It adversely impacts his education in two ways, Your Honor. One, by having to get on a bus to go away from his neighborhood school. Plaintiffs are stigmatized by getting on what is known as the short bus, being identified as disabled, a harm that this court identified as sufficient for standing in Doe v. National Board of Medical Examiner. But when he went to this other – when he went to Grant, there were, what, four out of 17 that were – That's correct. So they're in an inclusion class, so that would seem to negate a bit of the, quote, stigma, close quote. Well, Your Honor, I think that's two separate factual scenarios, though. In getting on the bus, he is identified. His neighborhood friends know that he's going to a different school. He's not going to the school that everyone else is going to. But that happens all the time for kids that are in special classes. I'm not sure where there's a stigma to it. Your Honor, it is true that students who require special education services are differentiated in certain ways. But here the question is whether or not Dumont is considering whether it is necessary to inflict that harm on them. You know, we have – we get a lot of these cases over the years, and I remember cases where parents have very much wanted their child to go to a school that provided for those special services, did not want the child mainstreamed. We're quite happy to have them picked up by a bus that would take them there. And, I mean, how do we deal with, you know, the other side of the coin for those children and parents who desire this kind of service? Yes, Your Honor. Including bus service. I think that's a different situation, though, Your Honor. If a parent is requesting a certain service, the parent has accepted the fact, the harm that might occur by being bused out of the neighborhood. But here, and under IDEA, the school district is required to take into consideration whether or not sending the student out of their neighborhood school will impact their education. The – I'm sorry, just one other thing. But isn't there another issue, though, the fact that the parent decided to accept this and didn't ask for a state put order? Does that impact your position at all here? I don't think it does, Your Honor. First, as to the point about – that appellees have made about the state put, it's Dumont's obligation to determine what the state put is when a dispute arises. Dumont placed AT in the Grant School, thereby assuming – we can assume that Dumont thought that Grant was the state put location. Dumont has now stopped from coming here and saying that Selzer is the state put. Second, JT never accepted AT's placement at the Grant School. The Grant School placement was the only placement that Dumont offered. JT had no other option. She could – she does not have enough – But that was on appeal, and then you withdrew that, correct, in November of the – was it 2009? Well, Your Honor, we did initially file an administrative complaint, although making slightly different allegations than we make here. There we did make allegations, substantive allegations, about AT's – whether his education was appropriate. Accepting your argument, as you presented, it means that a parent would be – the school district would have to provide special education for a parent who wants it in any one of the four elementary schools in the district. Is that right? I don't think that's right, Your Honor. What we're saying is that the school district has to consider whether the location of the special education services has an educational impact on the students' education. The location of the educational services. You mean Selzer? Well, the fact that AT was not receiving his special education services in his neighborhood school, which is Selzer – That's what she wants. She wants – she said, I want special education, but I want it in my local school. Selzer. That's correct, Your Honor, but our claim is not that Dumont has to automatically give in to any parent's request for special education services in their neighborhood school, but merely that Dumont has to consider whether or not removing the child from their neighborhood school impacts that child's education. Here, Dumont has admitted that they never consider this. They have a blanket policy that IEP teams can never consider the educational impact of location. Your request is that this case go back so that Dumont considers the request. That's correct, Your Honor. And, of course, Dumont can say, well, we've considered it, but for budgetary considerations, we can't provide special education in this one elementary school. Well, Your Honor, our claim is that under the IDEA, Dumont cannot make a blanket rule that they don't have the resources to provide that service. Okay. That gets to the merits, but your request is that the case go back for consideration of whether the special education can be provided at Selzer. Yes, Your Honor, because the lower court determined that a purely procedural claim such as ours, that Dumont has failed to comply with the procedure of individual consideration under the IDEA, did not constitute an injury in fact to provide or establish standing for plaintiffs. That was an incorrect holding, Your Honor. The U.S. Supreme Court and Lujan v. Defenders of Wildlife has stated that a procedural harm is sufficient to establish standing as long as the procedure protects a concrete interest. The Supreme Court in Raleigh also… So what's the concrete interest here? The procedure of individual consideration, Your Honor, and the U.S. Supreme Court in the Raleigh case also noted the importance of the procedure of individual consideration to the IDEA scene. Wasn't there an individual education plan that the parent participated in? Yes, Your Honor, there were IEP meetings and there was an IEP drafted for this. Before the school year started… Yeah, there was a proposal. They had something out by May of 2009, right? I believe that's correct, Your Honor. And so what the mother wished to have was that the child could begin in September or late August in Seltzer, but instead they said Grant. So she appealed that, and then by November she drops the appeal to the OAL. But my thought is, okay, maybe this won't happen during J.T.'s kindergarten year, but what about – we're thinking about first and second and third grade, aren't we? So why would she have dropped the appeal? Actually, Your Honor, in this case we aren't talking about second and third grade or first grade. We're only talking about kindergarten. Our claim is that Dumont's policy only affects kindergartners, that Dumont only sends – it's only kindergartners that they send out of the district or out of their neighborhood schools to the Grant school to receive the services of a special education teacher. Thus, our claims in the administrative court were futile because the administrative court cannot grant time – Okay, and why is it that you're not concerned about having J.T. at his local school for first grade? I mean, other than you're saying this is Dumont's policy for kindergartners. Is this not Dumont's policy for the school district's policy for first graders? That's correct, Your Honor. In fact, J.T. was returned to his neighborhood school in first grade, which is part of the reason there was a harm here. He was removed from his neighborhood school only to be returned a year later as an outsider. There is no reason for Dumont not to give individual consideration to the location of their educational services. So he went to Seltzer for the first grade? That's correct, Your Honor. So if he went to Seltzer for the first grade, he wouldn't be coming in as an outsider. He'd be coming in as the closest to home school, correct? No, Your Honor, because he attended kindergarten in the Grant school. So he was removed from Seltzer for a year. I can't remember. It's been so long ago since I was in first grade in kindergarten. But it would seem to be immaterial. I mean, if he starts, there's no stigma attached to that. Attached to it? I'm sorry. In other words, no kids in first grade aren't going to say, hey, last year you were over at Grant. Well, Your Honor, we have expert testimony that is to the contrary, that says, basically, kindergartners and first graders can be cruel, too. No, I think you're – it seems to me you're talking about merits of the case. Because the case hinges on standing, doesn't it? Your appeal is from a magistrate's ruling that you have no standing. That's correct, Your Honor. All this Court needs to decide is whether or not the procedure of individual consideration, its deprivation by the Dumont School District. Whether you have a stake in the outcome, basically. I think more, Your Honor, whether or not the procedure is a concrete interest, such under the Supreme Court's ruling in Lujan, if its deprivation is sufficient to establish standing. Good. Thank you very much. Thank you. We'll have you back on rebuttal. Mr. Harrison. Good morning. It's a pleasure to be here. Eric Harrison, Bethesda and Warble for the defendants. The procedure of individual consideration, that's a phrase that my adversary just used a few times. Consideration is a thought process. Individual consideration is a thought process. If what he's talking about is an IEP meeting at which the particular needs of the student were actually considered in the formulation of an IEP, it is undisputed that that occurred in this case. That's the nature of the IEP. Yes, sir. I'm sorry, could you help me with the issue of standing? I thought the appeal is from the magistrate's ruling that the plaintiff has no standing. It certainly is, Your Honor. But you're talking about the individual education claim. How is it that she has no standing? Well, you need an injury in fact, and the IDEA defines that which is a cognizable cause of action. The IDEA itself at subsection E expressly says procedural violations will be actionable only when they do one of the following things. They deny a FAPE. They impede the provision of a FAPE. They deny meeting. And their argument is that there was an impeding of a FAPE here. That's the argument. That is what the plaintiffs have put forth to the court. The evidence of record, their assertions do not support that allegation. But you've got to get to the merits to do that, don't you? You do. And in that respect, Judge Fuentes, the merits are sort of bootstrapped into the standing consideration because you have two federal claims, IDEA and Rehabilitation Act, which as this court has ruled time and time again in the special ed context when we're talking about access to an educational program are essentially one and the same. The requirements under one are the flip side of the prohibitions under the other. The IDEA itself says here's what you need to allege and prove in order to have an actionable case under the IDEA. And the plaintiffs have failed to allege that very thing. So the case or controversy requirement under Article III is informed by a determination of the federal statute under which the plaintiffs are seeking relief. If there were no threshold requirement, if it were Congress's pronouncement and or the pronouncement of courts interpreting the IDEA, that any alleged procedural violation is actionable under the IDEA, then I'd be focusing exclusively on what actually happened in the trenches in this case with the mother filing a due process petition, the mother not only withdrawing the due process petition but engaging in a dialogue with the director of special services before the school year started and said, you know what, I think he could be here, but I'm going to go with your decision. I have trust and faith that you're doing the right thing. I thought there was no individual consideration consistent with the goals of the IDEA Act. To keep children in the neighborhood and to make sure that they are mainstream with other children in the same class. That is factually incorrect simply because, as the record shows, we have expert reports which have reviewed the facts that have gone into evidence. Plaintiff's expert is Dr. Quirk, who issued opinions not based on anything about AT, whom she never met or observed, but on theories of inclusive practices and proper ratios and locations. Our expert, Dr. Kathleen Rotter, a career special educator, actually listened to the recording of the May 21st, 2009 IEP meeting. Additionally, Dr. Paul Barbato, the director of special services, described in an undisputed affidavit what happened at that meeting. By the way, there's a recording. It wasn't part of the record on this motion. But it was aptly summarized in Dr. Barbato's affidavit as including an express discussion about the pros and cons of placing AT at Seltzer versus Grant. So individual consideration to the extent it's a meaningful dialogue in which the parent is an active participant, that happened here. It's undisputed that that happened here. What the plaintiffs are doing is, I suggest to the court, cleverly seeking to recharacterize a mental process as an event. The policy of DuMont is to provide special education in only one of four of the elementary schools. And I understand it rotates. That's a bit of an oversimplification, Your Honor. What we had at Grant School in AT's kindergarten year was a self-contained class, so with students from the Grant catchment area and some students from the other three catchment areas. We also had the regular classroom, which was called ICR, which consisted of 17 kids, four of whom were classified, including AT. But there were other students who there were some educated out of district because of their needs, and there were others who were educated in their home schools. And the record supports that and demonstrates that. Why were some in their home schools and AT and three others not? Because of their particular individualized needs, as enunciated in the IEPs. I have, there are several points I could get to. Are there any other particular issues or questions that the court would like me to focus on with the time I have left? Well, the, I'm not sure anybody cited a case that says, discusses whether procedural violation, if one exists, is cognizable under the IDEA in the standing context. Agreed. I'm not aware of any case that has ruled on Article III standing as a function. Yeah, they all seem to go straight to the merits. They do, and I would suggest to the court that's probably because there's been a record below that has played out and there would have been a decision by the hearing officer below. Let's say we have a decision denying the relief requested by an administrative law judge saying there's been no actual deprivation of fate or lack of meaningful participation or impeding of fate, then you'd be substantively appealing from that. So Article III standing would be an unnecessary argument. You'd be there on the merits. And you'd have a case or controversy because you would have exhausted the process set forth in the IDEA for determination, and there'd be a material fact in dispute over whether there was an actionable claim, a real injury. Whereas in this case, when the administrative process is bypassed, you are looking at all the allegations viewed in the light most favorable to the plaintiff who does not allege a denial of fate, who does not allege a denial of parental meaningful participation. Now, what he alleges is that there was a blanket policy that precluded consideration of having a child in school closest to home. Yes. He's depicting what occurred to A.T. and four other students as the consequence of a blanket policy. But when you go behind the wording and calling it a blanket policy and labeling the case as a putative class action, what you see is four kids with four IEPs which expressly stated where they're going to be educated and why. That is not the function of a blanket policy. As to the centralization of special ed services, as Judge Fuentes noted, that does go to the merits of the case of whether a school board has a right to centralize it. This circuit has not ruled directly on that, I concede. But you have to look at the lead plaintiff in a case such as this. And the fact that it's been stylized as a class action, the fact that it's been stylized as a challenge to a policy, does not negate the fact that we are dealing with a lead plaintiff, A.T., who suffered no educational deprivation. That has to happen first. You know, in a due process hearing, I'm not saying, by the way, we are not arguing that it's impossible that something like this could have an educational impact. It seems to me you're, she says she suffered an injury, by she I mean the parent. Yes. You say she didn't suffer an injury. She outlines her injury to be that I am being stigmatized by having to be bused to a different school and I don't want my child to be taught in a class that concentrates children with a disability. Rather, I want my child taught, consistent with IDEA, in a school or in an elementary school where my child would be streamlined, I guess, together with other children who don't have disabilities. She, certainly the mother. I mean, that's the assertion. That is the assertion. In terms of an injury, you say, well, there's no injury. The assertion of stigmatization is made by an expert who says that kids are inherently stigmatized when they're bused to another building. That alone is not, should not be considered a constitutional injury in the absence of proof that something with respect to this child's needs made it so. Lots of autistic kids have very particularized issues. If, when JT received this IEP, being told your child needs to go to grant school, she said, wait a minute, in his preschool program at Selzer School, he has developed a particular facility in communicating, let's say using PECS, Picture Exchange Communication System, which a lot of autistic students use. Not this child, but I'm just citing an example. He has a particular facility with it there. The classroom is organized in such a fashion that he's gotten good with it. He hates change. He doesn't react well to change on account of his disability. He needs to stay there because we're going to lose all the progress he's making. And let's further suppose the plaintiff has a psychologist or an educational expert who's going to say that as well. That is the stuff of due process hearings, not only as to determining what's appropriate and what's not appropriate, but also as to determining what is the stay-put placement. Was the decision made that he can learn just as well in the Selzer School with no special education training as he could in the grant school with others who have the same condition as he? No, the contrary determination was made at the IEP meeting of May 21, 2009. Subsequently, however, Dr. Barbato, in a continuing effort to work with JT, who, as the court knows, has other disabled kids in-district, said to her, you know what? I can put AT at Selzer School. I can get him supports there. Not the full level of supports that are available in this ICR class, but we'll try it out, and she declined that. It was the school district's determination, the child study team's determination. He wasn't yet where he needed to be to be in his home school without an in-class special ed teacher. What's the situation with the futility argument and exhaustion here? Exhaustion as a start is required in an IDEA claim. The futility argument, I think it's flummoxed by the lack of an attempt to make a stay-put motion. Plaintiffs saying that we should be judicially stopped from arguing that if they had moved for stay-put relief, that they would have gotten the Selzer School. The brief argues that presumably Dumont thinks Grant was the stay-put placement. There's nothing to support that assertion. We never stood before an administrative law judge and said, Judge, even if you rule against us, Grant is the same thing as Selzer, so that's stay-put. In the Office of Administrative Law, I'm often hit with stay-put motions, and the administrative law judges are often tasked with determining what's the last agreed-upon placement. If that precise thing isn't available in a subsequent school year, because we know as a practical matter these cases don't get decided within 45 days, then it's my job, administrative law judge, to determine. You are aware that the New Jersey, you may not be aware of it, but the New Jersey Superior Court ruled that the plaintiff in this case has standing to assert the case in the state court. Under New Jersey standing statute. And has exhausted their claims. Yes, I was party to that action. The Judge Contillo of New Jersey Superior Court ruled that under New Jersey standing requirements, which require only a stake in the game, so to speak, that the plaintiff did have standing under New Jersey law to be there. Their view was that federal requirements were more exactly New Jersey state. Yes, that's very clearly stated in New Jersey law. Because of the idea, the particularity in the idea, statute? I don't know. I think it would be broader than that, Your Honor. We have a whole host of cases in New Jersey under prerogative writs over land use issues. I'm talking about how do you differentiate the standing between the New Jersey standard and the federal standard. The New Jersey standard itself is much more lax. I understand. But I guess I'm going back to what you said in the beginning. You were referencing the subsection E in IDEA. Yes, sir. I'd say that in this case, to your point, that the IDEA, the statute under which plaintiff is asserting a claim, which has as its mirror the Rehabilitation Act, that defines what is a cognizable injury in this context. And by virtue of that fact, plus by virtue of the fact that the plaintiff herself declined the very relief she was seeking, any injury in this case, quote-unquote, would not be cognizable under the IDEA and would be a self-inflicted one. You don't address in your brief whether exhaustion under the IDEA is jurisdictional or an affirmative defense. That is true. I do not. Certainly, because one needs to exhaust in order to get to district court, I think that the districts have ruled in favor of it being a jurisdictional defense. Well, there's a circuit split on this. Yes, there is. I concede that. Whether it's ruled jurisdictional or not, Your Honor, there's no reason to excuse it in a case such as this. I'm sorry. Go ahead. Yeah, the last point, the sharing of costs, is there a rule basis for the magistrate to require the parties to share costs, which are not for obtaining discoveries, it's for the school to obtain the retention costs? I'm not aware of a particular provision within Rule 26 which says that the court has discretion to do such a thing. I'm aware of a generalized discretion under the rule of reason that informs Rule 26. Our discovery costs in this case with respect to electronically stored information that we had to harvest and produce were in excess of $150,000. Plaintiff was going a step further to demand some additional hard drives, which were pretty far afield of the mainstream, so to speak, of communications regarding special ed. I think the court acted within its inherent discretion. I can't cite a particular sentence in a rule. No, sir. Thank you. Okay. Thank you very much. Thank you. Mr. Wilhelm. Mr. Wilhelm, if I can start on the question of exhaustion. Let's assume for the moment that exhaustion is an affirmative defense and they really didn't bring it up, so it seems, okay, maybe you win on that. But there's a flip to that. If you withdrew or if the mother withdrew the appeal in November of 2009 and this only applies to kindergarten and at this point A.T. is, I think I said J.T. before, but A.T. is the son, he's, I guess, in the third grade, isn't your case moot? Our case is not moot, Your Honor. Certainly for this person bringing the claim, the mother, for a child who's now long past kindergarten. Yes, Your Honor. Our case is not moot under the theory of inherently transitory case or a case that is capable of repetition without being remedied. The McLaughlin decision is the inherently transitory decision and, of course, Roe v. Wade and the City of Lions case. So our case is not moot for those reasons. You're fighting for other people like J.T., I suppose. That's correct, Your Honor. Further, Your Honor, just to continue on the topic of exhaustion, while this Court has not decided whether or not exhaustion is prudential or jurisdictional, the Bethvee case, of course, admits for a number of exceptions. And I would submit that if this Court has already decided that there are exceptions to exhaustion, the exhaustion rule cannot be jurisdictional because having exceptions by definition means that the exhaustion for the IDEA is prudential. I'd like to just go back to what you were discussing with Mr. Harrison about standing. The lower court's decision, the magistrate judge's decision, was premised on the idea that we did not have standing under the IDEA because we did not allege a substantive violation of the IDEA. As Mr. Harrison noted, the IDEA statute that governs this is Section 1415F3E. That section has two subsections. One subsection provides standing for substantive violations and the other subsection provides standing for procedural violations. If we are required to allege a substantive violation in order to have standing, then the two subsections are superfluous. We have standing under the section for procedural issues that Dumont impeded the child's right to a free and appropriate education. Mr. Harrison said that what we had to allege was that there was an educational deprivation. The statute does not require an educational deprivation. What it requires is that the school district impeded the child's right to an appropriate education. And by denying the student's right to the procedure of individual consideration, the school district impeded the child's right to faith. Do you have standing just by asserting that or do you have to flesh it out and specify what aspect of a free and appropriate education the child was deprived of? Your Honor, we just have to show that the procedure, as important as individual consideration, was deprived. This Court noted in the Polk decision that individual consideration is at the core of the IDEA and in the O'Berry decision that school districts must consider the location of educational services. For that reason, it's a concrete interest that is actionable. So you go back to your contention that the child was not given an individualized consideration? He wasn't given individual consideration on the issues of whether or not being in a class with a higher percentage of students with disabilities affected his education and wasn't considered as to whether or not the location of his education impacted his education. Good. Any other questions? Mr. Wilhelm, thank you very much. We thank counsel for an excellent argument. The Court will take the matter under adjournment.